

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| STANDARD INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No. 4:17-cv-00994-A |
| | § | |
| PHILLIP A. BOWLAND, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Plaintiff Standard Insurance Company ("Standard") files this motion for default judgment (the "Motion") against Defendant Phillip A. Bowland ("Defendant"), and states:

## NATURE OF THE ACTION

Standard filed its Original Complaint (the "Complaint") (Dkt. 1) in this cause on December 14, 2017, seeking equitable rescission from a plan participant under a plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). Specifically, Standard filed this suit requesting that the Court rescind and cancel Defendant's long-term disability ("LTD") insurance coverage issued to Defendant under Standard's group LTD insurance policy no. 649087-C (the "Group Policy") due to material misrepresentations by Defendant on the application. Second, Standard sought a declaratory judgment that Defendant never obtained the LTD insurance coverage under the Group Policy due to Defendant's material misrepresentations on the application for coverage. Finally, Standard sought its reasonable and necessary attorneys' fees and court costs. To date, despite being properly served via hand delivery, Defendant has not filed an answer to Standard's Complaint or otherwise entered an appearance in this case. Thus, Standard respectfully requests that the Court grant this Motion.

## OPERATIVE FACTS

1. **The Plan.** Caliber Home Loans, Inc. ("Caliber") established and maintained an employee welfare benefit plan as defined by 29 U.S.C. § 1002(1) (the "Plan") to provide certain benefits to its eligible employees. Among the benefits provided under the Plan to eligible employees is LTD insurance fully insured by the Group Policy issued by Standard, as amended from time to time.

2. **The Application.** On October 24, 2015, Defendant applied for LTD insurance coverage under the Group Policy (the "Application"). Importantly, on the Application, Defendant answered "no" to all medical questions on the Application, including the following:

> #2(A) Has a medical professional ever treated you for, diagnosed you as having, or prescribed medication for you for any of the following: Disease of the liver, pancreas, kidney, ulcers, stomach, intestinal ailment, or digestive system disorder?
>
> #2(D) Has a medical professional ever treated you for, diagnosed you as having, or prescribed medication for you for any of the following: Cardiovascular disease, heart ailment, arteriosclerosis, abnormal pulse, high blood pressure, heart murmur, valve, circulatory, or vascular disorders?
>
> #2(G) Has a medical professional ever treated you for, diagnosed you as having, or prescribed medication for you for any of the following: Osteoarthritis, rheumatoid arthritis, osteoporosis, pain in the joints, amputations, or other disease or disorder of the bones, joints, body, or spine, arthritic or disc conditions?
>
> #2(J) Has a medical professional ever treated you for, diagnosed you as having, or prescribed medication for you for any of the following: Psychiatric or mental conditions, depression, adjustment disorder, affective disorder, or anxiety disorder, or obsessive-compulsive disorder?

(emphasis added). Defendant also signed the Application beneath the following:

> I represent that the statements contained herein, including those made in response to the Medical History Statement questions and any attachments, are true and complete, and I understand that they form the basis of any coverage under the Group Policy(ies). I understand that any misstatements or failure to report information which is material to the issuance of coverage may be used as a basis for rescission of my insurance and/or denial of payment of a claim. I agree to notify Standard Insurance Company (The Standard) of any change in my medical condition while my enrollment application is pending.

3. **Standard Issues Coverage.** In reliance on the Application, Standard approved LTD insurance coverage for Defendant under the Group Policy on November 20, 2015. This coverage is subject to the following incontestability provision in the Group Policy:

> Any statement made to obtain or to increase insurance is a representation and not a warranty. No misrepresentation will be used to reduce or deny a claim or contest the validity of insurance unless:
>
> 1. The insurance would not have been approved if we had known the truth; and
>
> 2. We have given you or any other person claiming benefits a copy of the signed written instrument which contains the misrepresentation.
>
> After insurance has been in effect for two years during the lifetime of the insured, we will not use a misrepresentation to reduce or deny the claim, unless it was a fraudulent misrepresentation.

4. **The Claim.** Defendant submitted a claim for LTD benefits under the Group Policy, claiming that he became disabled and unable to work on December 17, 2016, due to back surgery (the "Claim"). Standard subsequently received various materials in support of Defendant's Claim, and commenced its routine contestable investigation of the Claim, as his LTD insurance coverage under the Group Policy had not been in effect for two (2) years.

5. **Standard Learns of the Misstatements.** During its investigation, Standard requested and obtained records from (among other providers) Highlands Medical Group, Arlington Memorial Hospital, Texas Digestive Disease Consultants, and Methodist Mansfield Medical Center, and these records revealed that Defendant made misrepresentations in the Application regarding his history of anxiety. By way of example:

- On October 8, 2015, Defendant's records reflect a diagnosis and treatment for anxiety;
- On November 20, 2014, Defendant's records reflect a diagnosis and treatment for anxiety;
- On July 17, 2014, Defendant's medical records reflect a diagnosis and treatment for anxiety;

- On January 16, 2014, Defendant's medical records reflect a diagnosis and treatment for anxiety; and
- On January 23, 2012, Defendant's medical records reflect a diagnosis and treatment for anxiety.

6. Defendant did not disclose any information regarding his history of anxiety or the treatment or testing for that condition to Standard, whether in the Application or otherwise, during the application process for the subject LTD insurance coverage.

7. **Standard Rescinds the Coverage.** Upon completion of its contestable review, Standard determined that Defendant had, in failing to truthfully answer Standard's questions on the Application, made misrepresentations that were material to the underwriting risk and were relied upon by Standard in issuing the LTD insurance coverage under the Group Policy. Had Standard known of the Defendant's true health history, it would have not issued him the LTD insurance coverage. By letter dated November 16, 2017, Standard gave notice to Defendant that it would not be bound by the LTD insurance coverage under the Group Policy and tendered the premiums (with interest) that had been paid for it. Therein, Standard also notified Defendant that even if his LTD insurance coverage under the Group Policy had not been rescinded by Standard, the Claim would not have been payable in any event because Defendant is not Totally Disabled under the Own Occupation definition of Disability under the Group Policy.

## PROCEDURAL HISTORY

8. On December 14, 2017, Standard filed its Complaint, in which it sought the Court's declaration that Defendant's LTD insurance coverage under the Group Policy was properly canceled and rescinded. The Court issued summons for Defendant (Dkt. 6), which Standard forwarded to process servers for service. On January 20, 2018, Standard served copies of the Complaint and the Summons on Defendant by hand delivery through a process server (Dkt. 14; Dkt. 10), and he has not entered an appearance or otherwise answered this action.

## DEFENDANT IS NOT IN MILITARY

9.　As set forth in the Declaration of Stephanie A. Young, RP, attached hereto as Exhibit "1" and is incorporated herein by reference, Defendant is not on active military duty.

## CLERK'S DEFAULT REQUESTED

10.　Concurrently with this Motion, Standard has requested the Clerk to enter Defendant's default, pursuant to FED. R. CIV. P. 55(a), since he was duly and lawfully served and the time for him to answer, plead, or otherwise defend has expired.

## ARGUMENT AND AUTHORITIES

11.　Standard is entitled to the requested default judgment. Defendant's failure to answer and defend this lawsuit, and subsequent default, constitutes an admission of all of the allegations asserted against him in the Complaint. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Standard respectfully requests that, pursuant to FED. R. CIV. P. 55(b)(2), the Court sign the Default Judgment submitted herewith as Exhibit "2," granting Standard the relief it has requested including an adjudication that Defendant's LTD insurance coverage under the Group Policy was properly canceled and rescinded.

12.　In addition to the foregoing relief, Standard requests an award of its reasonable and necessary attorneys' fees under 29 U.S.C. § 1132(g)(1). To recover such fees, Standard must show some degree of success on the merits. *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010) (internal citations and quotations omitted). Once the Court determines that a party is eligible for a fee award, it may consider: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees

sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980)).

13. Applying the foregoing, Standard properly filed this rescission action in good faith, seeking to rescind Defendant's coverage under the Group Policy due to material misrepresentations on the application for insurance submitted to Standard, with knowledge that they would be relied upon in granting any coverage under the Group Policy. If the Motion is granted by the Court, this result will show success on the merits by Standard. As such, Standard should recover its reasonable attorneys' fees in the amount of $6,000.00. *See* Exhibit "3."

14. Standard engaged Figari + Davenport, LLP. ("Figari + Davenport") to represent it in this matter. Figari + Davenport filed Standard's original complaint seeking to rescind Defendant's coverage under the Group Policy, which, if payable, would have provided approximately $2,400 a month in LTD benefits to Defendant through age 65.

15. In light of the nature of the claims, the amount of controversy, the services performed in the lawsuit, as well as the other factors set forth in Texas Disciplinary Rule of Professional Conduct 1.04(b), attorneys' fees of $6,000.00 were necessarily incurred for prosecuting Standard's rescission action and are reasonable in relation to attorneys' fees generally charged for the same or similar work in Texas. *See* Exhibit "3."

## RELIEF REQUESTED

16. Standard respectfully requests that, pursuant to FED. R. CIV. P. 55(b)(2), the Court sign the Default Judgment against Defendant submitted herewith granting Standard the requested rescission of Defendant's coverage under the Group Policy; and an award to Standard of its reasonable and necessary attorneys' fees and costs to be paid to Figari + Davenport.

Dated: March 27, 2018

Respectfully submitted,

By: _____
Ryan K. McComber
State Bar No. 24041428
ryan.mccomber@figdav.com
Cameron E. Jean
State Bar No. 24097883
Cameron.jean@figdav.com

**FIGARI + DAVENPORT, LLP**
901 Main Street, Suite 3400
Dallas, Texas 75202-3796
(214) 939-2000 – telephone
(214) 939-2090 – facsimile

ATTORNEYS FOR PLAINTIFF

**EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| STANDARD INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. NO. 4:17-cv-994-A |
| | § | |
| PHILLIP A. BOWLAND, | § | |
| | § | |
| Defendant. | § | |

## DECLARATION OF STEPHANIE A. YOUNG, RP

1. My name is Stephanie A. Young, RP. I am over 18 years of age, of sound mind, capable of making this declaration, and personally acquainted with the facts stated herein. The facts and statements contained in this declaration are made on the basis of my personal knowledge and are true and correct.

2. I am a paralegal with Figari + Davenport, L.L.P. In that capacity, I investigated the facts below.

3. On March 27, 2018, I ran the name Phillip A. Bowland with his social security number through the Servicemembers Civil Relief Act ("SCRA") web site for military verification, which is run by the Department of Defense, for the purpose of identifying individuals who are protected from suit by reason of their current service posting in the United States Military, Reserve, and Guard. According to that site, Phillip A. Bowland is not on active military duty.

4. Attached to this Declaration is a true and correct copy of the SCRA Certification verifying that Phillip A. Bowland is not on active military duty.

**DECLARATION OF STEPHANIE A. YOUNG, RP** - Page 1

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED on this 27th day of March, 2018.

_____
Stephanie A. Young, RP

Case 4:17-cv-00994-A Document 15 Filed 03/28/18 Page 10 of 16 PageID 77
Department of Defense Manpower Data Center
Results as of: Mar-27-2018 01:53:26 PM
SCRA 4.4



## Status Report
### Pursuant to Servicemembers Civil Relief Act

| | |
|---|---|
| SSN: | XXX-XX-5926 |
| Birth Date: | |
| Last Name: | BOWLAND |
| First Name: | PHILLIP |
| Middle Name: | |
| Status As Of: | Mar-27-2018 |
| Certificate ID: | W4CXX7XWRQ2NRZS |

| On Active Duty On Active Duty Status Date ||||
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date ||||

| Left Active Duty Within 367 Days of Active Duty Status Date ||||
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date ||||

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date ||||
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty ||||

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. ? 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q33) via this URL: https://scra.dmdc.osd.mil/faq.xhtml#Q33. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. ? 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC ? 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC ? 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC ? 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

**EXHIBIT 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| STANDARD INSURANCE COMPANY, | § § § § | |
| Plaintiff, | | |
| v. | § § § § § § § | C.A. No. 4:17-cv-00994-A |
| PHILLIP A. BOWLAND, | | |
| Defendant. | | |

## DEFAULT JUDGMENT

Pending before the Court is Plaintiff Standard Insurance Company's ("Standard") Motion for Default Judgment (the "Motion") against Defendant Phillip A. Bowland ("Defendant"). Having considered the Motion, the pleadings on file, and the applicable law, and otherwise being fully informed, the Court finds that Standard has made an appearance in this action and has announced ready for trial and that Defendant, although having been duly and legally summoned to appear and answer, failed to appear, answer, plead, or otherwise defend and has defaulted. The Court further finds that the Summons was properly served on Defendant pursuant to law, and that the return of service was filed with the Clerk in the time required by law. The Court has read the pleadings and the papers on file, and it is of the opinion that Standard's allegations against Defendant in the Original Complaint (Dkt. 1) have been admitted. It is therefore

ORDERED, ADJUDGED, and DECREED that the Motion is hereby GRANTED. It is further

ORDERED, ADJUDGED, and DECREED that a DEFAULT JUDGMENT is hereby entered in Standard's favor against Defendant. It is further

ORDERED, ADJUDGED, and DECREED that Defendant's long-term disability ("LTD") insurance coverage under group LTD insurance policy no. 649087-C (the "Group Policy"), fully insured by Standard, is hereby declared null, void, terminated, and rescinded *ab initio* as if never effective. It is further

ORDERED, ADJUDGED, and DECREED that as a result of the rescission of Defendant's coverage under the Group Policy, any claims that have been submitted in the past, or may be submitted in the future, by Defendant under the Group Policy are not eligible for payment. It is further

ORDERED, ADJUDGED, and DECREED that Standard has refunded, in full, the premiums Defendant paid in connection with the Group Policy. It is further

ORDERED, ADJUDGED, and DECREED that no right of recovery for Defendant exists or has ever existed under the Group Policy, whether at law or in equity. It is further

ORDERED, ADJUDGED, and DECCREED that Standard is awarded its reasonable and necessary attorneys' fees in the amount of $6,000.00. It is further

ORDERED, ADJUDGED, and DECREED that any and all claims, demands, debts, or causes of action that Defendant could have asserted against Standard herein are DISMISSED WITH PREJUDICE.

This is a FINAL JUDGMENT.

SO ORDERED.

SIGNED this ____ day of _____, 2018.

 

_____
UNITED STATES DISTRICT JUDGE

**EXHIBIT 3**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| STANDARD INSURANCE COMPANY, | § § § § | |
| Plaintiff, | | |
| v. | § § § § § § | C.A. No. 4:17-cv-00994-A |
| PHILLIP A. BOWLAND, | | |
| Defendant. | | |

## DECLARATION OF RYAN K. MCCOMBER

1. My name is Ryan K. McComber. I am a partner in the Dallas, Texas law firm of Figari + Davenport, L.L.P. ("Figari + Davenport"). I am one of the attorneys representing Plaintiff Standard Insurance Company ("Standard") in this action. By virtue of my experience as a lawyer and my representation of Standard in this case, I have personal knowledge of the facts stated below, and they are all true and correct.

2. I obtained my B.A. from the University of Oklahoma in 2000 and my J.D. from Southern Methodist University School of Law in 2003. Since obtaining my law license in 2003, I have practiced law throughout Texas. I am admitted to practice before all of the United States District Courts in Texas, and the United States Courts of Appeals for the Fifth Circuit and the Ninth Circuit. I have practiced exclusively in the area of civil litigation since 2003 and, for the last 10 plus years, have spent much of my time representing insurance companies in various types of actions, including rescission actions

like this case. As such, I am familiar with the reasonable fees charged by attorneys in Texas for work similar to that involved in the claims asserted in this action.

3. In determining whether the fees sought by Standard in this action are reasonable, I have considered the following factors:

    (a) the time and labor required;

    (b) the novelty and difficulty of the questions involved;

    (c) the skill requisite to perform the legal services properly;

    (d) the likelihood that the acceptance of the particular employment would preclude other employment;

    (e) the fee customarily charged in the locality for similar legal services;

    (f) whether the fee is fixed or contingent;

    (g) the time limitations imposed by the client or by the circumstances;

    (h) the amount involved and the results obtained;

    (i) the experience, reputation, and ability of the counsel performing the services;

    (j) the "undesirability" of the case;

    (k) the nature and length of the professional relationship with the client; and

    (l) awards in similar cases.

4. The bases for my opinions include my experience, skill, and training as an attorney together with information specifically related to the prosecution and defense of this action. In rendering my opinions, I have relied upon, among other documents, the claim file and pleadings filed in this action.

5.  My hourly billing rate for this matter is $280, and the associate assigned to this case has an hourly rate of $250. Based on my experience, it is my opinion that such rates are reasonable, usual, and customary in Texas for matters of this type.

6.  Based on the reasonable hourly rates above, the total fees incurred by Standard in this matter amount to $6,000, which were reasonable and necessarily incurred, for reviewing the relevant claim documents, reviewing correspondence from the Defendant prior to suit, drafting and filing this action, preparing Standard's documents for production, and filing the motion for default and supporting documents. All told, Figari + Davenport expended 23 hours of attorney and paralegal time in connection with the prosecution of this case, which reflects a blended hourly rate of $261 in this matter.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED on this 27th day of March, 2018.

_____
Ryan K. McComber